IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

TYLER J. CARROLL,

     Plaintiff,

v.                                    CIVIL ACTION NO. 1:22-CV-14
                                            (KLEEH)

WESTFIELD NATIONAL
INSURANCE COMPANY,

     Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING WESTFIELD'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court are Defendant Westfield National Insurance Company's ("Westfield") Motion for Summary Judgment [ECF No. 92] and Plaintiff Tyler J. Carroll's ("Carroll") Motion for Summary Judgment [ECF No. 94]. The cross motions are fully briefed and ripe for review.

### I.   FACTUAL BACKGROUND

**A. The Complaint**

On February 23, 2022, Carroll, by counsel, filed a complaint for declaratory relief in the United States District Court for the Northern District of West Virginia. ECF No. 1, Compl. Carroll alleges that he is entitled to coverage by Westfield under a Business Auto Policy it issued to West Virginia Heating & Plumbing ("WVH&P"), Carroll's employer. Id. ¶¶ 4-5. Carroll allegedly sustained injuries from an on-the-job motor vehicle accident on

Carroll v. Westfield                                    1:22cv14

### MEMORANDUM OPINION AND ORDER GRANTING
### WESTFIELD'S MOTION FOR SUMMARY JUDGMENT

May 4, 2021, and maintains Westfield has a duty to cover the accident and his resulting injuries. Id. ¶ 4. Carroll is a citizen and resident of Kanawha County, West Virginia. Id. ¶ 1. Westfield is a foreign corporation with a principal place of business in Ohio, and is authorized to transact business in Braxton County, West Virginia. Id. ¶ 2.

In May 2021, Carroll and his supervisor, Leonard Bragg ("Bragg") were assigned by WVH&P to a job at the Joseph F. Weis, Jr., United States Courthouse at 550 Grant Street, Pittsburgh, Pennsylvania. Id. ¶ 13. Carroll packed the 2014 GMC Savanna Van motor vehicle ("the vehicle") on May 2, 2021, with the required tools to complete the assigned job. Id. ¶ 14. Carroll and Bragg completed their workday at the Pittsburgh job on May 4, 2021, at approximately 5:30 p.m. at which time they gathered their tools and materials and loaded them onto the vehicle. Id. ¶¶ 20-22. Carroll, the driver of the vehicle, and Bragg left Pittsburgh and traveled south on Interstate 79 toward Charleston, West Virginia. Id. ¶¶ 23-27.

At approximately 9:05 p.m., Carroll and Bragg "observed a 1999 Chevy S-10 truck, traveling north, veer into the median and barrel roll into the southbound side of Interstate 79 causing [Carroll] to take evasive action to avoid physical contact between

2

Carroll v. Westfield                                               1:22cv14

MEMORANDUM OPINION AND ORDER GRANTING
WESTFIELD'S MOTION FOR SUMMARY JUDGMENT

the vehicles." Id. ¶ 28. Physical contact would have occurred between the two vehicles had Carroll not taken evasive action. Id. ¶ 29. Carroll steered the vehicle "to rest on the right-side shoulder of the I-79 southbound lanes." Id. ¶ 30. Carroll also activated the emergency flashers. Id. ¶ 33. "The out-of-control Chevy S-10 Truck came to a rest in and across the southbound lanes of Interstate 79, facing south." Id. ¶ 31. Realizing the driver of the 1999 Chevy S-10 truck, Charles Batton, needed aid, Carroll crossed I-79 and found Batton unconscious in the truck. Id. ¶ 34. Bragg located his cell phone flashlight and stood at the rear of the vehicle and waved it in the air to alert oncoming traffic. Id. ¶ 35.

Two vehicles approached the crash scene and stopped, avoiding any contact. Id. ¶¶ 36-37. The third vehicle, operated by Kristy Pechinko, approached the scene at a high rate of speed, passed the stopped vehicles, and crashed into the 1999 Chevy S-10 truck and Carroll who was still working to free Batton from the truck. Id. ¶¶ 38-39. Carroll was thrown into the grassy median while Batton's vehicle was spun further down I-79. Id. ¶¶ 40-42. Plaintiff became seriously injured, "suffering multiple fractures resulting in an above-the-knee amputation of his left leg, right leg tib-fib fracture; right and left arm fractures; and a skull fracture, all

MEMORANDUM OPINION AND ORDER GRANTING
WESTFIELD'S MOTION FOR SUMMARY JUDGMENT

of which were life-threatening injuries and a direct result of the vehicle crash." Id. ¶ 43. Carroll maintains physical contact would have occurred between the vehicle and Pechinko's vehicle had he not taken the evasive action. Id. ¶ 40. Batton was insured by State Farm Insurance with liability insurance limits of $25,000.00 and was deemed underinsured to cover the injuries and damages incurred by Carroll. Id. ¶¶ 44-45. Pechinko was uninsured. Id. ¶ 46.

Based on these facts, Carroll requests a declaration that the Westfield WVH&P Business Auto Policy No. TRA-4175404 ("the policy") affords uninsured and underinsured motorist coverage and excess uninsured motorist insurance coverage, which would respond in damages for the claims of Carroll. Carroll obtained Batton's State Farm policy limits of $25,000.00 plus his own uninsured motorist coverage limits because of the fault of Pechinko, who was uninsured. He also reached an agreement with State Farm to be paid "his own underinsured motorist coverage limits as the result of a less than full recovery of compensation for the fault of Charles T. Batton." Id. ¶ 60. On August 8, 2022, Westfield paid Carroll $300,000.00 in uninsured motorist coverage and $300,000.00 underinsured motorist coverage under the WVH&P policy for the date of loss, May 4, 2021. ECF Nos. 94-13, 94-14. Carroll's alleged damages are estimated in excess of $5,000,000.00. Compl. ¶ 100.

4

MEMORANDUM OPINION AND ORDER GRANTING
WESTFIELD'S MOTION FOR SUMMARY JUDGMENT

Carroll claims Westfield is "obligated to pay to [him] the policy limits of underinsured motorists' coverage and uninsured motorist coverage as compensation for the losses and damages he sustained as a result of the accident of May 4, 2021, caused by the acts and/or omissions of Batton, an underinsured motorist and Pechinko an uninsured motorist." Id. ¶ 65. Carroll also contends Westfield failed to offer the option of purchasing UM and UIM coverage with the Business Auto Policy and the Commercial Auto Excess Policy in the amount equal to the liability limits, and failed to secure a knowing and informed waiver. Id. ¶¶ 82, 88-92.

**B. The Policy**

At issue in this action is one insurance policy, specifically the Westfield WVH&P Business Auto Policy No. TRA-4175404 ("the policy") effective July 1, 2020, through July 1, 2021. Carroll's employer, WVH&P, was insured under Westfield's Commercial Auto policy. The policy included a $1,000,000.00 per accident liability limit, uninsured ("UM") and underinsured ("UIM") coverage limits of $300,000 per accident, and included commercial excess coverage with liability limits of $2,000,000.00 and no additional UM or UIM coverage. Compl. ¶ 48; ECF No. 93 at 2; ECF No. 92-2 ("Ex. B.").

The pertinent policy language is as follows:

**Carroll v. Westfield**                                    **1:22cv14**

**MEMORANDUM OPINION AND ORDER GRANTING**
**WESTFIELD'S MOTION FOR SUMMARY JUDGMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WEST VIRGINIA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE**

For a covered "auto" licensed or principally garaged in, or for "auto dealer operations" conducted in, West Virginia, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM


With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

. . .

**A. Coverage**

**1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured" or "underinsured motor vehicle".

6

Carroll v. Westfield                                    1:22cv14

**MEMORANDUM OPINION AND ORDER GRANTING**
**WESTFIELD'S MOTION FOR SUMMARY JUDGMENT**

**2.** With respect to damages resulting from an "underinsured motor vehicle", we will pay under this coverage only if a. or b. below applies:

**a.** The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

**b.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle", and we:

1) Have been given prompt written notice of such tentative settlement; and

2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

. . .

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" or using a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of ser- vice

Carroll v. Westfield                                                    1:22cv14

**MEMORANDUM OPINION AND ORDER GRANTING**
**WESTFIELD'S MOTION FOR SUMMARY JUDGMENT**

---

                 because of its breakdown, re-
pair, servicing, "loss" or
destruction.

    **b.** Anyone for damages he or she is
entitled to recover because of
"bodily injury" sustained by
another "insured".

    **c.** The Named Insured for "property
damage" only.

. . .

**B. Limit of Insurance**

    **1.** Regardless of the number of covered
"autos", "insureds", premiums paid,
claims made or vehicles involved in the
"accident", the most we will pay for all
damages resulting from any one "accident"
is the Limit Of Insurance  for Uninsured
or Underinsured Motorists Coverage
shown in the Schedule.

    **2.** In no event will an "insured" be
entitled to receive duplicate payment for
the same elements of "loss."

. . .

**F. Additional Definitions**

    As used in this endorsement:

    **1.** "Family member" means a person re-
lated to an individual Named Insured by
blood, marriage or adoption, who is a
resident of such Named Insured's
household, including a ward or foster
child.

    **2.** "Occupying" means in, upon, getting
in, on, out or off.

Carroll v. Westfield                                         1:22cv14

**MEMORANDUM OPINION AND ORDER GRANTING
WESTFIELD'S MOTION FOR SUMMARY JUDGMENT**

. . .

**4.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which no liability bond or policy at the time of an "acc rovides at least the amounts required by the West Virginia Motor Vehicle Safety Responsibility Law;

. . .

**5.** "Underinsured motor vehicle" means a land motor vehicle or "trailer" to which a liability bond or policy applies at the time of the "accident" but t e amount paid for "bodily injury" or "property damage" to an "insured" under that bond or policy is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

. . .

Ex. B.

## II.  LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which

Carroll v. Westfield                                          1:22cv14

### MEMORANDUM OPINION AND ORDER GRANTING
### WESTFIELD'S MOTION FOR SUMMARY JUDGMENT

it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

### III. DISCUSSION

Westfield moves for summary judgment, arguing Carroll was not occupying or using the vehicle at the time of his injuries, and WVH&P received commercially reasonable offers of UM and UIM coverage from Westfield and exercised a knowing and intelligent decision to reject additional coverage above the $300,000.00 per accident provided to WVH&P under the policy issued by Westfield.

The Court must first determine whether the vehicle was occupied or in use at the time of Carroll's injuries. Because the

10

**MEMORANDUM OPINION AND ORDER GRANTING**
**WESTFIELD'S MOTION FOR SUMMARY JUDGMENT**

Court finds Carroll was not occupying or using the insured vehicle at the time he sustained the injuries to which he claims Westfield covers, the Court need not consider whether WVH&P received commercially reasonable offers of UM and UIM coverage from Westfield and exercised a knowing and intelligent decision to reject additional coverage.

### A. Carroll was not occupying or using the vehicle at the time he became injured.

Carroll's employer, WVH&P, was insured under Westfield's Commercial Auto policy between July 1, 2020, through July 1, 2021. See ECF No. 92-2 at 46, Ex. B., Common Policy Declarations. WVH&P is titled as a corporation on the Declarations. Id. "If the Named Insured is designated in the Declarations as[] . . . [a] corporation . . . then the following are 'insureds': Anyone 'occupying' or using a covered 'auto'." ECF No. 92-2 at 250, Ex. B. "'Occupying' means in, upon, getting in, on, out or off." Id. at 251.

West Virginia requires "insurers [to] provide uninsured motorist coverage, and make available underinsured motorist coverage, for injuries causally connected to the use of the vehicle, and foreseeably identifiable with the normal use of the vehicle." Syl. Pt. 6, Keefer v. Ferrell, 655 S.E.2d 94 (W. Va.

## MEMORANDUM OPINION AND ORDER GRANTING
## WESTFIELD'S MOTION FOR SUMMARY JUDGMENT

2007) (internal citation omitted). "The term 'uses' . . . is less restrictive than the term 'occupying.' 'Use' of an insured vehicle implies employing the vehicle for some purpose or object of the user." Syl. Pt. 3, Adkins v. Meador, 494 S.E.2d 915 (W. Va. 1997).

The Supreme Court of Appeals of West Virginia has established a 4-part test which is an "instructive guide[] for finders of facts to follow in evaluating whether an injury arose from the 'use' of a motor vehicle, and no one factor carries more weight than the others":

> [T]he court must determine whether there is a causal connection between the motor vehicle and the injury. In making that determination, the court may consider, but is not limited by, the following factors: a) whether the individual was in reasonably close proximity to the insured vehicle at the time of the accident; b) whether the individual was vehicle oriented as opposed to highway or sidewalk oriented; c) whether the individual had relinquished control of the vehicle; and d) whether the individual was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident.

Syl. Pt. 2, Cleaver v. Big Arm Bar & Grill, Inc., 502 S.E.2d 438, 438-39, 443 (W. Va. 1998). Cleaver involved a collision between Pedestrian and Driver of a moving vehicle on a state route. Id. The Pedestrian exited his own vehicle and while crossing Route 45 on foot, was hit by a vehicle driven by Driver. Id. at 439. There

Carroll v. Westfield                                          1:22cv14

MEMORANDUM OPINION AND ORDER GRANTING
WESTFIELD'S MOTION FOR SUMMARY JUDGMENT

was a passenger in Driver's car, and as a result of the crash, both the Pedestrian and passenger perished. Id. Passenger filed a wrongful death suit against the Pedestrian and Driver. Id. "Under the terms of the Erie automobile liability policy, coverage exists *only* if [the passenger's] death is determined to have arisen out of the use of the [Pedestrian's] vehicle." Id. at 440 (emphasis in original). The Court found that "[u]pon parking his car and exiting the vehicle, [Pedestrian] had fulfilled the purpose for which he was utilizing his car" under the policy, and "conclude[d] that the [Pedestrian's] vehicle was not in 'use' at the time of the accident." Id. at 442.  When an insured has "no active engagement with the [insured vehicle]", was not "riding in it, . . . entering or exiting it, . . . and . . . was not in the process of loading or unloading it," the insured is not "using" the vehicle. Erie Ins. Prop. & Cas. Co. v. Cooper, 516 F.Supp.3d 567, 575 (S.D.W. Va. 2021).

Here, Carroll was not occupying the vehicle because he was not "in, upon, getting in, on, out or off" the vehicle at the time he incurred his injuries. Carroll was not in close proximity to the insured vehicle; he had steered the vehicle "to rest on the right-side shoulder of the I-79 southbound lanes" and activated his emergency lights. ECF No. 1, Compl. ¶¶ 30-33. Carroll exited

**MEMORANDUM OPINION AND ORDER GRANTING**
**WESTFIELD'S MOTION FOR SUMMARY JUDGMENT**

the vehicle and walked to Batton's truck with a purpose "[t]o check on Mr. Batton." ECF No. 92-6, Carroll Dep. 60:1-5. At this point, Batton's truck was in I-79 southbound, across the lanes from where Carroll stopped his vehicle. Compl. ¶ 31; Carroll Dep. 57:14-58:20. At the time of the accident, Carroll was at Batton's truck attempting to render aid. The last thing Carroll remembers before waking up in the hospital was the smell of beer from Batton's vehicle. Carroll Dep. 62:3-12. Carroll also remembers attempting to open the diver door of Batton's truck, but it was jammed shut. ECF No. 94-1, Carroll Aff. ¶ 25.  Because Carroll was not occupying or using the insured vehicle, Carroll does not qualify as an "insured" under the policy; therefore, he is not entitled to the UM and UIM coverage under the policy. There being no genuine dispute of material fact and Westfield being entitled to judgment as a matter of law, the Court **GRANTS** the motion for summary judgment. ECF No. 92.

### IV.  CONCLUSION

For the reasons discussed, the Court concludes that under the plain and unambiguous terms of its policy, Westfield is not required to cover Carroll. Accordingly, the Court **GRANTS** Westfield's Motion for Summary Judgment [ECF No. 92]. Carroll's Motion for Summary Judgment is **DENIED**. [ECF No. 94]. All other

Carroll v. Westfield                                    1:22cv14

### MEMORANDUM OPINION AND ORDER GRANTING
### WESTFIELD'S MOTION FOR SUMMARY JUDGMENT

pending motions are **DENIED AS MOOT.** Pursuant to Federal Rule of Civil Procedure 54(b), and finding no just reason for a delay of the appeal of this Order, the Court **DIRECTS** entry of a final judgment in favor of Westfield, and to **STRIKE** this case from the Court's active docket.

It is so **ORDERED.**

Pursuant to Rule 54(b), the Court **DIRECTS** the Clerk to enter a separate judgment order. It further **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order and the judgment order to counsel of record.

**DATED:**  September 27, 2023

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA